UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| DEENA MARIE CALLAHAN,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | ) No. SA CV 16-00588-AS<br>)<br>) **MEMORANDUM OPINION**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**I. PROCEEDINGS**

On March 30, 2016, Plaintiff Deena Marie Callahan ("Plaintiff") filed a Complaint seeking review of the Commissioner's denial of Plaintiff's application for a period of disability and disability insurance benefits. (Docket Entry No 1). On August 31, 2016, Defendant filed an Answer to the Complaint, and the Certified Administrative Record ("AR"). (Docket Entry Nos. 20-21). The

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for Acting Commissioner Carolyn W. Colvin in this case. See 42 U.S.C. § 205(g).

1

parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 14-15). The parties filed a Joint Stipulation ("Joint Stip.") on December 20, 2016, setting forth their respective positions on Plaintiff's claims. (Docket Entry No. 24).

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On February 25, 2014, Plaintiff, formerly employed as a policy holder information clerk (see AR 23, 51), filed an application for disability insurance benefits, alleging disability beginning on October 17, 2013. (AR 154-55). On July 20, 2015, Administrative Law Judge ("ALJ"), John Wojciechowski, examined the record and heard testimony from Plaintiff and vocational expert ("VE"), Kelly Winn-Boaitey. (AR 31-54). On October 5, 2015, the ALJ denied Plaintiff benefits in a written decision. (AR 9-30).

The ALJ applied the five-step process in evaluating Plaintiff's case. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the alleged onset date of October 17, 2013, and that Plaintiff's date last insured was June 30, 2019. (AR 14). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with neuropathy; tendon tears and osteoarthritis of the ankles; ligament tears in the wrists; obesity; depressive disorder;

and anxiety disorder. (AR 14-15).[2] At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a Listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 15-17).

Before proceeding to step four, the ALJ found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC")[3] to do the following: occasionally lift or carry ten pounds; frequently carry less than ten pounds; stand or walk for two hours and sit for six hours in an eight-hour workday; occasionally climb, balance, stoop, kneel, or crawl; never use ladders, ropes, or scaffolds; avoid moderate exposure to industrial hazards; occasionally have contact with co-workers and supervisors; never have public contact; and limited to simple, repetitive tasks. (AR 17).

After reviewing Plaintiff's medical record (see AR 17-23), the ALJ found that there was no objective evidence to support a CTS or upper-extremity diagnosis, noting that (1) electrodiagnostic tests for Plaintiff's upper extremities rendered normal results (AR 19-20); (2) a pain management specialist found that Plaintiff had "5/5 strength" in her upper-extremities with a somewhat reduced grip in the right hand (AR 20); and (3) a MRI of Plaintiff's wrists revealed

---

[2] The ALJ found that Plaintiff's alleged collapsed arches and degenerative changes in the feet, carpel tunnel syndrome ("CTS"), gout, hypertension, and obsessive compulsive disorder were not severe impairments. (AR 14).

[3] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

tears of the left and right scapholunate ligaments and ganglion cysts. (Id.). The ALJ determined that Plaintiff suffered from limitations in her lower extremities because of a "mildly abnormal" July 2014 electrodiagnostic test; an October 2014 MRI of the left ankle showing a partial thickness tear; a July 2014 MRI of the cervical spine revealing degenerative disc disease; and a December 2013 MRI of the lumbar spine showing a disc bulge in the L3-L4 facets, L4-L5 hypertrophy of the facets with moderate bilateral neural foraminal narrowing, and a L5-S1 circumferential disc bulge. (AR 18-21). Plaintiff also appeared with an antalgic, shuffling gait and used either a cane or walker during appointments. (Id.). The ALJ referenced physical therapy records stating that aquatic therapy "decrease[d] [Plaintiff's] pain temporarily." (AR 20). The ALJ found that Plaintiff suffered from mental limitations, noting that she was diagnosed with general anxiety disorder and major depressive disorder. (AR 19).

The ALJ then addressed Plaintiff's credibility and the opinions of her treating, examining, and nonexamining physicians. (See AR 20-23). The ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms not credible because Plaintiff was not compliant with treatment orders to attend regular physical therapy appointments. (AR 21).

At step four, the ALJ determined that Plaintiff was not able to perform her past relevant work as a policy holder information clerk. (AR 23). At step five, the ALJ found Plaintiff was able to perform jobs consistent with her age, education, and medical limitations existing in significant numbers in the national economy.

At the hearing, the ALJ asked the VE whether a hypothetical person — with the same age and educational background as Plaintiff, who could occasionally lift at least 10 pounds; frequently lift and carry less than 10 pounds; stand and walk for at least two hours in an eight-hour workday; sit for at least six hours in an eight-hour workday; and is limited to simple, repetitive tasks, no public contact, and occasional contact with co-workers and supervisors — could perform any work. (AR 51-52). The VE testified that such a person could perform the requirements of assembler (Dictionary of Occupational Titles ("DOT") No. 734.687-018[4] (sedentary unskilled Specific Vocational Preparation ("SVP") 27,000 positions in the national economy)) and final assembler[5] (DOT 713.687-018[6] (sedentary unskilled SVP 21,000 positions in the national economy)). (AR 52). The ALJ

---

[4] The DOT description for assembler requires "[e]xerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body;" occasional "walking or standing for brief periods of time;" and the "specific vocational preparation" to reach, handle, and finger constantly. ASSEMBLER, DOT 734.687-018.

[5] The VE referred to this position as "small final assembler," but the DOT description lists it as "final assembler." (See AR 52; DOT 713.687-018). For the sake of brevity, the Court refers to the position as "final assembler."

[6] The DOT description for final assembler requires "[e]xerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body;" occasional "walking or standing for brief periods of time;" and the "specific vocational preparation" to reach, handle, and finger frequently. FINAL ASSEMBLER, DOT 713.687-018.

did not ask the VE if her testimony conflicted with the DOT description for assembler and final assembler. (See AR 51-52).

The ALJ adopted the VE's testimony in finding that, considering the Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff was able to perform work as an assembler and a final assembler. (AR 24). Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 24-25).

On October 22, 2015, Plaintiff requested that the Appeals Council review the ALJ's Decision, which was denied on March 1, 2016. (AR 1-8). The ALJ's Decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

### III. STANDARD OF REVIEW

This court reviews the Administration's decision to determine if the decision is free of legal error and supported by substantial evidence. See Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001). As a result, "[i]f the evidence can reasonably support either affirming or reversing

the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

## IV. PLAINTIFF'S CONTENTIONS

Plaintiff alleges that, at step five, the ALJ (1) did not encompass Plaintiff's assigned functional limitations in posing the hypothetical to the VE; and (2) failed to reconcile the VE's testimony, that Plaintiff could perform the jobs of assembler (DOT 734.687-018) and final assembler (DOT 713.687-018), with the DOT. (Joint Stip. at 3-14, 17-26).

## V. DISCUSSION

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material legal error.[7]

### A. The ALJ's Hypothetical Encompassed All Of Plaintiff's Functional Limitations

Plaintiff contends that the ALJ's hypothetical was inadequate because it omitted limitations resulting from Plaintiff's alleged CTS and upper-extremity neuropathy. Plaintiff contends that

---

[7] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision will not be reversed for errors that are harmless).

orthopedic tests and Plaintiff's subjective complaints establish that Plaintiff has handling, fingering, and reaching limitations that are supported by substantial evidence in the record. (Joint Stip. at 8-14). Defendant asserts that the ALJ's hypothetical fully encompassed Plaintiff's limitations that were supported by substantial evidence in the record. (Joint Stip. at 14-17).

Hypothetical questions posed to the VE must include "all of the claimant's functional limitations, both physical and mental" supported by substantial evidence in the record. Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (quoting Flores v. Shalala, 49 F.3d 562, 570–71 (9th Cir. 1995); see Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing Magallanes v. Bowen, 881 F.2d 747, 756–57 (9th Cir. 1989) (ALJ's reliance on VE testimony was proper where hypothetical contained all Plaintiff's limitations that were found credible and supported in record). An ALJ may properly omit an alleged impairment from a hypothetical if the omission of the impairment is supported by substantial evidence in the record. Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001).

The ALJ found that Plaintiff was not functionally limited by CTS and upper-extremity neuropathy because a July 2, 2014,
\\
\\
\\
\\
\\

electromyography test ("EMG")[8] and a December 30, 2014, electrodiagnostic study of Plaintiff's upper extremities were negative for both conditions. (AR 600-02, 1148). Despite these clinical findings, Plaintiff maintains that positive Phalen's[9] and median Tinel's[10] tests in the record constitute substantial evidence that Plaintiff is functionally limited in handling, fingering, and reaching objects. (Joint Stip. at 9). However, these tests conflict with objective clinical findings that the ALJ found persuasive (see AR 19-20). Where the medical evidence in the record is not conclusive, "resolution of conflicts" is solely the function of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Comm'r, Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Accordingly, the ALJ's omission of limitations related to Plaintiff's alleged CTS and upper-extremity neuropathy diagnoses in the hypothetical is supported by substantial evidence in the record.

---

[8] "The diagnosis of [CTS] is made primarily by clinical examination and the patient's history of symptoms. It is important to remember that not all wrist and finger pain is [CTS]. In addition not all finger numbness or tingling is CTS. Confirmation of the diagnosis with the use of nerve electrodiagnostic testing is useful. Electrodiagnostic testing, made up of nerve conduction and [EMG] testing is used to confirm the diagnosis of [CTS] and other nerve disorders." https://www.hss.edu/conditions_carpal-tunnel-syndrome-myths-facts-diagnosis-treatment.asp.

[9] A Phalen's test is an orthopedic test used to diagnose CTS. Positive signs of a Phalen's test include upon compression, complaints of pain, tingling, or numbness in the hands. http://www.physio-pedia.com/Phalen's_Test.

[10] A Tinel's test is an orthopedic test used to detect irritated nerves. Positive signs of a Tinel's test is upon light tapping over a nerve the patient complains of a tingling sensation. http://www.physio-pedia.com/Tinel%E2%80%99s_Test.

Moreover, Plaintiff contends that the ALJ was required to include her subjective complaints regarding pain, tingling, and numbness in her hands in the hypothetical question to the VE or in formulating her RFC. (Joint Stip. at 13). However, the ALJ provided clear and convincing reasons to find Plaintiff's testimony regarding her symptoms and limitations not credible. (AR 20-23). Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (An ALJ may "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.").

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible because they were not corroborated by the record and because Plaintiff had failed to follow a prescribed course of treatment despite "improvement in symptomology." (AR 22-23). This was a clear and convincing reason to find Plaintiff's testimony less credible.[11] See Osenbrock, 240 F.3d at 1157-1166 (affirming ALJ's decision that relied in part on finding that neurological and orthopedic evaluations revealed "very little evidence" of any significant disabling abnormality of the claimant's

---

[11] Although a claimant's credibility "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor . . ." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Lack of supporting objective medical evidence is a key consideration for the ALJ in evaluating credibility. See 20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4) (in determining disability, an ALJ must evaluate a claimant's statements about the intensity, persistence and limiting effects of her symptoms "in relation to the objective medical evidence and other evidence").

upper or lower extremities, or spine); Chaudhry v. Astrue, 688 F.3d 661, 672 (9th Cir. 2012) (quoting Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) ("[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated . . . ").

The record supports the ALJ's finding that Plaintiff did not follow prescribed physical therapy treatment to alleviate her symptoms. Plaintiff was prescribed aquatic physical therapy in order to improve her range of motion and strength, which included shoulder flexion and extension, wall push-ups, straight arm circles, and various lower-extremity exercises. (AR 842-50). On March 26, 2015, Plaintiff's physical therapist, Shannon Walker, P.T., informed treating physician, Abel Quesada, M.D., "that [Plaintiff] ha[d] not been fully participating in MD prescribed PT visits," missing eleven appointments in the course of three months and attending only three appointments over the course of four weeks. (AR 850). On April 20, 2015, Chelsea Sobeich, D.P.T., noted that Plaintiff "demonstrate[d] improved [range of motion] and strength since beginning aquatic therapy [and] would benefit from aquatic therapy if she was more consistent with attendance." (AR 849). Similarly, on June 18, 2013, a therapist at the Physical Therapy Center noted that Plaintiff "showed up only once for evaluation" and did not attend any further physical therapy visits. (AR 270). Throughout these periods, Plaintiff kept regular appointments with Suhasini Dushmukh, M.D. (see 394-591), Charles Schwartz, M.D. (see AR 670-84), Nina Barlevy Psy.D. (see 685), and Amir Pouradib, M.D. (see 856-71).

Plaintiff's unexplained failure to follow prescribed physical therapy treatment is therefore a clear and convincing reason to reject Plaintiff's symptom testimony. See Chaudhry, 688 F.3d at 672.

### B. The VE's Testimony Does Not Conflict With The DOT

Plaintiff contends that the ALJ improperly found that Plaintiff is able to perform the occupations of assembler (DOT 734.687-018) and final assembler (DOT 713.687-018) because there is a deviation between Plaintiff's RFC and the description of these positions in the DOT. (Joint Stip. at 5-8). Specifically, Plaintiff alleges that the ALJ's finding that Plaintiff's RFC limits her to "frequently" lifting and carrying less than 10 pounds (AR 17), conflicts with the DOT descriptions for these jobs, which require a worker to "have constant reaching, handling, and fingering" abilities, and be able to perform "repetitive work, or perform[ ] continuously the same work, according to set procedures, sequence, or pace." (Joint Stip. at 5-6). Defendant asserts that "[t]he hypothetical question included all of the limitations found by the ALJ, who, contrary to Plaintiff's assertions, did not limit [Plaintiff] to frequent use of the hands." (Joint Stip. at 14).

The ALJ relies on the DOT and VE testimony to determine whether — given the claimant's RFC, age, education, and work experience — the claimant "actually can find some work in the national economy." 20 C.F.R. § 416.966(e); Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689

(9th Cir. 2009). "When there is an apparent conflict between the [VE's] testimony and the DOT — for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear to be more than the claimant can handle — the ALJ is required to reconcile the inconsistency." Zavalin, 778 F.3d at 846 (citing Massachi v. Astrue, 486 F.3d 1149, 1153-54 (9th Cir. 2007). An ALJ's failure to inquire into an apparent conflict is harmless where there is no actual conflict between the RFC and the DOT. Ranstrom v. Colvin, 622 F. App'x 687, 689 (9th Cir. 2015) (citing Massachi, 486 F.3d at 1154 n. 19).

Here, the VE testified that Plaintiff can perform the occupations of assembler (DOT 734.687-018) and final assembler (DOT 713.687-018). (AR 51-52). The DOT defines assembler as a sedentary position that requires "[e]xerting up to 10 pounds of force occasionally;" a "negligible amount of force frequently . . . to lift, carry, push, pull, or otherwise move objects;" and constant handling, fingering, and reaching. 734.687-018 ASSEMBLER, DOT 734.687-018. The DOT description for final assembler is the same as that of assembler, except that it requires frequent (exists 1/3 to 2/3 of the time) handling, fingering, and reaching. See 713.687-018 FINAL ASSEMBLER, DOT 713.687-018.

The ALJ's RFC determination was consistent with the DOT descriptions for the jobs identified by the VE. Despite Plaintiff's assertions (see Joint Stip. at 5), the ALJ assigned no limitation regarding Plaintiff's ability to, handle, finger, or reach objects. (AR 17). Thus, the VE's testimony that Plaintiff could perform the

jobs of assembler and final assembler did not deviate from the DOT. See Reese v. Astrue, No. ED CV 11-540-PLA, 2012 WL 137567, at *7 (C.D. Cal. Jan. 17, 2012) (finding no conflict between the DOT and Plaintiff's limitations where ALJ's RFC determination contained no reaching limitations and VE testimony stated Plaintiff could perform jobs that require constant reaching).

Moreover, the ALJ's failure to question the VE regarding an apparent conflict between the DOT and VE testimony is harmless error. See Massachi, 486 F.3d at 1154 n. 19 (it is harmless error for an ALJ to not inquire about an apparent conflict between the DOT and RFC when there is no actual conflict between these descriptions). Accordingly, the ALJ properly found that Plaintiff could perform the alternative work of assembler and final assembler.

## VI. CONCLUSION

For the foregoing reasons, the decision of the Administrative Law Judge is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 8, 2017

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE